IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES S. GRILL,

    Plaintiff,

    vs.                         No. CIV S-10-0757 GEB GGH PS

TOM QUINN, et al.,

    Defendants.            <u>FINDINGS AND RECOMMENDATIONS;</u>

                                                  <u>ORDER</u>

_____/

*Introduction and Summary*

        The simplified version of this litigation is either that the government or defendant Secretary (hereafter "Forest Service") is using various environmental laws to unduly thwart development of a private parcel amidst the Tahoe National Forest, or that plaintiff has been unable to comply with legitimate terms and conditions of various use permits for a development which would otherwise be lawful. The facts and the law regarding jurisdiction detailed below, of course, are much more complex.

        The Forest Service has moved to dismiss for lack of jurisdiction and for failure to state a claim. For the reasons that follow, the court recommends that Forest Service motions to dismiss be granted in part and denied in part.

\\\\\

*Facts*[1]

The factual recitation herein does not purport to finally resolve any issues of fact on the merits of this litigation under whatever theory advanced. This recitation is performed pursuant to the standards utilized in adjudicating Fed. R. Civ. P. 12 (b)(1) motions, see infra, in order to assess the jurisdiction of the court to adjudicate the theories advanced. The record is sketchy at this point, but no party has requested an evidentiary hearing.

Plaintiff apparently lived proximate to a private parcel (the "Parcel") in the Tahoe National Forest. He purchased this Parcel in the very early 1990s, or perhaps late 1980s. Access to this Parcel was over Forest Service lands, and crossed a creek, ostensibly on Forest Service Lands as well. Also, apparently, due to a filed or threatened litigation in state court, plaintiff and the Forest Service agreed that plaintiff had a right to access his newly acquired parcel over Forest Service property due to the provisions of Alaska National Interest Land Conservation Act (ANILCA § 1323(a)) 16 U.S.C. 3210 (a). [2] Access required the building and/or the refurbishing of a road, and most importantly for this litigation, the construction of a bridge over Scotchman Creek.

The resolution of the lawsuit expressly or impliedly required the preparation of an environmental report and the issuance of a special use permit by the Forest Service. Plaintiff submitted proposed plans of some sort to the Forest Service, and work commenced on an Environmental Assessment. On or about October 23, 1995, the EA was issued followed closely by the FONSI (Finding of No Significant Impact), but the Special Use Permit was not issued (according to the exhibits) until November 17, 1998. The Permit (attached as Exhibit A to the Complaint) was issued for the purpose:

\\\\\

---

[1] Many of these facts are taken from the exhibits attached to the Complaint in this case.

[2] Forest Service counsel represented at hearing that it had a copy of a dismissed state lawsuit.

>    to gain vehicle access to private property, which is landlocked by National Forest
>    System Lands.  Use also includes construction and maintenance of a bridge on
>    said roadbed and burying and maintaining a 6" or less utility conduit in said
>    roadbed.

Importantly,

>    2. The Permittee in exercising the privileges granted by this permit shall comply
>    with all applicable State and Federal laws, Executive Orders, and Federal rules
>    and regulations, and shall comply with all State standards for public health and
>    safety, environmental protection, and siting construction, operation, maintenance
>    of or rights-of-way for similar purposes if those standards are more stringent than
>    applicable Federal standards.

Other provisions pertinent to this motion include:

>    8. All construction or reconstruction of the road shall be in accordance with plans,
>    specifications, and written stipulations approved by the Forest Service prior to
>    beginning such reconstruction (See Exhibit B)
>                                   ***
>    15.  This permit may be terminated or suspended upon breach of any of the
>    conditions herein.
>                                   ***
>    20.  Unless sooner terminated in accordance with the terms of this permit, this
>    permit shall expire and terminate on December 31, 2007.  At that time, if the
>    permittee still needs the road for the purposes for which the permit is granted, the
>    permit will be reissued for successive periods of 10 years.  At the time of
>    reissuance, the terms and conditions may be modified and new conditions or
>    stipulations added at the discretion of the Forest Service.

The cover letter to the Permit (for some reason not dated until February 23, 1999) (Exhibit H) provided:

>    Upon receipt and approval of your engineering plans and drawings, a fully
>    executed copy of the construction stipulations will be sent to you.[3]

For unexplained reasons, no activity of record seems to have been pursued until 2007.  In July of 2007, plaintiff was issued a building permit by Nevada County.  Exhibit J.  California Fish and Game also approved of the project, especially the bridge construction, in

---

[3] Plaintiff had submitted engineering drawings to obtain the permit, which had been approved, Exhibit G; it is not clear what, in addition to these drawings plaintiff was required to submit.

2007 as well.  By e-mail to plaintiff, the Forest Service indicated its approval to begin construction: "The Forest Service has approved your submitted bridge design...[and will] allow immediate construction pending submittal of a stream alteration permit..." (which appears to have been the Fish and Game approval).

However, the just approved construction was halted a scant month or so later due to alleged environmental concerns which had not been addressed in the prior EA analysis. Plaintiff was told, "[d]o not proceed with any plans or any surface disturbing activities at the site pending further notification."  Exhibit K.  On October 5, 2007, plaintiff was given the "back to square one" letter (Exhibit M) – even worse, in that plaintiff was to be tasked with further large expenditures if he decided to pursue the road and bridge.  The Forest Service, now, did not like the bridge plans after all, and stated:

> Since so much time has passed since the issuance of the Environmental Analysis, and since your permit expires December 31, 2007, and since engineering stipulations were never issued or agreed upon by both parties [despite the above approval], my decision is that the Environmental Analysis will need to be revised....We will also need to conduct surveys for all the new plants and animals which have been listed as sensitive since 1995.  We will not begin any of this until an agreement has been reached and you have provided the funding needing [sic] to complete an adequate analysis.

Id.

After plaintiff attempted an informal resolution by letter, Exhibit N, the Forest Service issued another letter saying that new law had come into effect after the prior EA/FONSI, and plaintiff would, in essence, have to start over at his own expense.  Exhibit O.  No appeal rights were given, and this lawsuit followed.

*Issues*

Plaintiff, appearing pro se, has set forth three claims.  The Claims are as follows:
1. Breach of Contract (The Use Permit) (based on the prior settlement).  The Court construes this as encompassing an Administrative Procedures Act Claim.
2. Fifth Amendment Violation – Taking without Compensation

4

3. Equitable Estoppel (based on inconsistent decisions)

The only defendant is Tom Quinn, Acting Supervisor of the Tahoe National Forest, in his official capacity.

While the United States construes some of the paragraphs within the Complaint as asserting claims outside of what is labeled, perhaps because of the tort like language, the undersigned does not understand that plaintiff has done so. The language is simply expressive of plaintiff's frustration, and is not fleshed out in any cognizable fashion. Therefore, the undersigned will only resolve jurisdiction for the three claims so clearly labeled.[4]

*Standards*

    A.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

"When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." Tosco Corporation v. Communities for a Better Environment, 236 F.3d 495, 499 (9th Cir. 2001) (citations and internal quotations omitted), abrogated on other grounds, Hertz Corp. v. Friend, __U.S.__, 130 S.Ct. 1181 (2010) .

Ordinarily, when "matters outside the pleadings are presented to . . . the court, the motion shall be treated as one for summary judgment." Fed. R. Civ. P. 12(c). However, when there is a factual question about whether a court has jurisdiction, the trial court may consider affidavits or any other evidence properly before the court. Sommatino v. United States, 255 F.3d

---

[4] To the extent that plaintiff does desire to add additional tort claims, highly problematic from all present appearances, he will have to amend the complaint. No defendant has been named in an individual capacity for a Bivens claim, and it is highly unlikely that such could be stated in the context of an administrative dispute. Moreover, a Federal Tort Claims Act claim would be barred by the apparent lack of filing a formal tort claim with the agency, even if plaintiff could avoid the other exemptions within that Act.

704, 710 (9th Cir. 2001); Am. Med. Colleges v. United States, 217 F.3d 770, 778 (9th Cir. 2000). Thus, unlike the strict limitations under Rule 12(b)(6) against considering matters outside the complaint, a Rule 12(b)(1) motion may refer to evidence extraneous to the complaint without converting it into a Rule 56 motion for summary judgment. Sun Valley Gas v. Ernst Enters., Inc., 711 F.2d 138,139 (9th Cir. 1983).

B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S. Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803 (1994), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers.

6

Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court. The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

*Discussion*

A. Breach of Contract

Normally, the rescission of a special use permit would not implicate contract theories. However, since the underlying special use permit arose out of a contractual settlement, the court will assume that the claim implicates a contract. Nevertheless, the district court has no jurisdiction to adjudicate contract disputes where the amount in controversy exceeds $10,000.00. 28 U.S.C. sections 1491(a)(1), 1346 (a)(2). However, plaintiff seeks no monetary relief; his prayer is for a combination of declaratory and injunctive relief. The issue becomes whether the district court has jurisdiction over a "contract" claim for non-monetary relief.

The answer is, with one exception, no. Section 1346 impliedly precludes such relief, no matter whether the claims court or district court is involved. North Star Alaska v. United States, 9 F.3d 1430, 1432 (9th Cir. 1993) (en banc). "However, the district court does have jurisdiction to hear claims for equitable relief which 'rest [] at bottom on statutory rights.'" Id. In North Star, the housing company plaintiff had entered into a lease with the Army. Later, because of a tax issue, North Star sought reformation of the lease to avoid the tax, claiming that the contract had miscited the governing statute which controlled the lease. On remand from the

en banc court, the panel found that the lease derived from the contractual relationship between North Star and the Army, and because reformation of the lease was the issue in the case, the matter was one solely of contractual concern, i.e., reformation depended upon the intent of the parties to the lease as to what statute was applicable, and did not depend on statutory rights. North Star Alaska v. United States, 14 F.3d 36 (9th Cir. 1994).

The situation is much different here.  Plaintiff's settlement agreement was very much dependent on § 3210(a) (requiring the Forest Service to give access to private parcels landlocked by federal land) which would have applied regardless of any underlying settlement agreement.  In other words, the "contract" gave no more or less rights than the statute itself. Jurisdiction is then predicated upon federal question, 28 U.S.C. section 1331, and the issue becomes whether the Forest Service violated the APA (5 U.S.C. section 702) in connection with its application of § 3210(a).  Thus, Claim 1 is for breach of contract only in a very indirect sense; it really depends upon application of a statute.

Normandy Apts Ltd. v. Dept of Housing etc, 554 F.3d 1290 (10th Cir. 2009), was written for this case.  In Normandy, plaintiff had contracted with HUD to operate Section 8 housing, where the bulk of rent was paid by HUD on behalf of the tenants.  The contract required Normandy to adhere to HUD's regulations concerning maintaining the apartments in good repair. When Normandy allegedly did not comply with the regulations, Normandy's Section 8 payments were terminated.  Normandy sued for specific performance of its contract.  The district court found that the Tucker Act applied and jurisdiction lay with the claims court.  The undersigned quotes at length from the appellate decision reversing the district court because its explanation applies four square to the instant dispute.

> On appeal, Normandy primarily asserts that the government has waived sovereign immunity by virtue of the Administrative Procedure Act ("APA"), which provides that, in most circumstances, "[a]n action in a court of the United States seeking relief other than money damages ... shall not be dismissed nor relief therein be denied on the ground that it is against the United States." 5 U.S.C. § 702; *see also Robbins*, 438 F.3d at 1080. We have noted, however, that "this waiver does not apply where any other statute that grants consent to suit expressly or impliedly

forbids the relief which is sought." *Robbins*, 438 F.3d at 1080 (internal quotations omitted). As the district court correctly recognized, we have found the Tucker Act to "impliedly forbid" certain relief in district court, such that the APA's waiver of sovereign immunity does not apply. The Tucker Act "vests exclusive jurisdiction with the Court of Federal Claims for claims against the United States founded upon the Constitution, Acts of Congress, executive regulations, or contracts and seeking amounts greater than $10,000." *Burkins v. United States*, 112 F.3d 444, 449 (10th Cir.1997). In *Robbins*, we joined several other circuits in concluding that the Tucker Act " 'impliedly forbid[s] ' federal courts from ordering declaratory or injunctive relief, at least in the form of specific performance, for *contract claims* against the government, and that the APA thus does not waive sovereign immunity for such claims." *Id*. at 1082.

***

In the instant action, Normandy did not expressly seek monetary relief. Rather, it asked for "temporary and permanent injunctive relief ... against [HUD's] attempts to terminate Housing Assistance Payments to Normandy on the basis of [its] inspection scores and reports." Complaint 16. The district court, however, understood Normandy's claim to be, in essence, a disguised claim for monetary relief. *See Normandy Apartments, Ltd*., 2007 WL 3232610 at *2 ("Although the relief sought in the complaint is couched as injunctive and declaratory relief ... what plaintiff is really seeking is money from the federal government, that is, the stream of Section 8 Housing Assistance Payments allegedly due under the HAP Contract.").
We disagree.

***

In contrast, the focus of Normandy's claim, when filed, was entirely prospective in nature. At the time of the district court's hearing on Normandy's preliminary injunction request on October 30, 2007, HUD had not yet terminated benefits and Normandy did not have any claim for past moneys due. See Aplt. Br. 13-14 (noting that HUD was not scheduled to terminate benefits until November 1, one day later). Had Normandy's action for injunctive relief been successful, it would not have enabled a claim for money damages; instead, it would have prevented such a claim from arising in the first place.

Normandy's claim was primarily designed not to enable a claim for past pecuniary harm, but to preserve an ongoing relationship. In such instances, we have found a claim's "prime objective" to be to obtain equitable relief, not monetary relief. *See Francis E. Heydt Co*., 948 F.2d at 676; see also *Bowen, 487 U*.S. at 905 n. 41, 108 S.Ct. 2722 (recognizing that whether relief is likely to have "significant prospective effect upon [an] ongoing ... relationship" is relevant to applicability of the APA's waiver of sovereign immunity). Normandy's claim is therefore similar to the claim in Southea*st Kansas Community Action Program Inc. v. Secretary of Agriculture of the United States,* 967 F.2d 1452 (10th Cir.1992). In that case, a nonprofit corporation sued the U.S. Secretary of Agriculture and the Secretary of the Kansas Department of Health and Environment, challenging the "Defendants' failure to renew its contract to administer a federal child nutrition program." *Id*. at 1454. We concluded that the essential purpose of the suit was to obtain equitable relief, finding significant that the plaintiff sought "an Order declaring [the] regulations void" and "a mandatory injunction compelling Defendants to continue to provide funds for Plaintiff's operation of the [federal] program until such time

as an adequate hearing is held on the merits of Plaintiff's disqualification and failure to renew Plaintiff's contract." Id. at 1456.

***

We also note that Normandy's claim does not seek "damages" within the meaning of 5 U.S.C. § 702. In *Bowen*, the Supreme Court explained that not all species of monetary relief constitute "money damages" as defined by that Act. Specifically, it distinguished between "money damages"-or compensatory relief to substitute for a suffered loss-and those specific remedies that have the effect of compelling monetary relief; the Court determined that only the former are exempted from the waiver of sovereign immunity contained in § 702 of the APA. *See Hamilton Stores, Inc.*, 925 F.2d at 1278 n. 12 (describing the holding in *Bowen*, 487 U.S. at 894-901, 108 S.Ct. 2722).

Normandy's complaint did not seek compensatory damages. Instead, it sought equitable relief to prevent against HUD's allegedly premature termination of Section 8 payments. Even if we agreed with the district court that Normandy's complaint sought specific performance of a contract, this would not amount to a suit for money damages; as a result, Normandy's suit would still seek "relief other than money damages." *See Bowen*, 487 U.S. at 900, 108 S.Ct. 2722 ("[C]laims for specific relief, [even when] monetary, are for 'relief other than money damages' and therefore within the waiver of sovereign immunity in section 702.")

The Normandy court also considered the implied preclusion of equitable relief under the Tucker Act:

Even when a claim seeks relief other than money damages, the "[APA's] waiver does not apply where any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Robbins*, 438 F.3d at 1080 (internal quotations omitted). We "read the APA in conjunction with other jurisdictional statutes waiving sovereign immunity in order to determine whether those statutes forbid the relief sought in the case at hand." Id. (internal quotations omitted).

***

It is true, of course, that because the regulatory violations that Normandy asserts implicate its contractual relationship with HUD, "plaintiff could not even assert [its claim] if it did not have a ... [c]ontract with HUD." *Normandy Apartments, Ltd.*, 2007 WL 3232610 at *2. But this does not convert a claim asserting rights based on federal regulations into one which is, "at its essence," a contract claim. When the source of rights asserted is constitutional, statutory, or regulatory in nature, the fact that resolution of the claim requires some reference to contract does not magically "transform [the] action ... into one on the contract and deprive the court of jurisdiction it might otherwise have." *Megapulse*, 672 F.2d at 968. Rather, "litigants may bring statutory and constitutional claims in federal district court even when the claims depend on the existence and terms of a contract with the government." *Robbins*, 438 F.3d at 1083-84 (quoting *Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 610 (D.C.Cir.1992)). Similarly, "[a]n order compelling the government to follow its regulations is equitable in nature and is beyond the jurisdiction of the Court of Federal Claims." *Ferreiro v. United States*, 501 F.3d 1349, 1353 n. 3 (Fed.Cir. 2007).

Normandy, 554 F.3d 1295-1300 (sections omitted).

There is essentially no difference in plaintiff's position herein than was the case in Normandy. At bottom, plaintiff is attempting to enforce his statutory right to access. The existence of the settlement "contract" is more or less irrelevant.

The government's argument that plaintiff does not have APA standing because a ruling in his favor will not give him any relief is misguided. It assumes that the predicate acts of the Forest Service in canceling its prior approval of plaintiff's plans, and requiring additional (and very expensive) additional environmental tasks, cannot be questioned or rescinded. It assumes that plaintiff cannot receive what is needed from the state in terms of permits. It further assumes the validity of all Forest Service findings to date, including the determination that the special use permit was validly expired or terminated, or unable to be renewed. The court cannot adopt such assumptions at this time. It may well turn out that the Forest Service could prevail on the merits, but that merits determination must await summary judgment.

B. Fifth Amendment Taking

Plaintiff does not frame his claim as one involving procedural due process, but rather expressly labels it a Taking Claim. As such, the district court does not have jurisdiction. "'[T]aking claims against the Federal Government are premature until the property owner has availed [himself] of the process provided by the Tucker Act.' [citations omitted]. The Tucker Act provides jurisdiction in the United States Claims Court for any claim against the Federal Government to recover damages founded on the Constitution, a statute, a regulation, or an express or implied-in-fact contract." Preseault v. Interstate Commerce Commission, 494 U.S. 1, 11-12, 110 S.Ct. 914, 921-922 (1990).[5] Nor does it matter that plaintiff is framing his Taking Claim as one for equitable relief. In a case similar to plaintiff's herein, where the Forest Service was regulating use of federal land proximate to a mining claim (not allowing motorized access to a mining claim), the Ninth Circuit held: "'Equitable relief is not available to enjoin an alleged

---

[5] Only claims whose amount in controversy is less than $10,000.00 are properly within the jurisdiction of the district court.

11

1  taking of private property for a public use, duly authorized by law, when a suit for compensation
2  can be brought against the sovereign subsequent to the taking.'" Clouser v. Espy, 42 F.3d 1522,
3  1539 (9th Cir. 1994) quoting Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1016-17, 104 S.Ct.
4  2862, 2879-80 (1984).

Plaintiff's complaint is confusing with respect to any Taking Claim in that, although he sets forth the monetary amount of the value of the land allegedly taken, he disavows any claim for monetary relief. Indeed, plaintiff may be attempting to state a claim for lack of procedural due process, and not a Taking Claim at all. However, if plaintiff does desire to state such a claim, he shall seek to amend the complaint after a district judge rules on any objections hereto. The undersigned is not opining at this time whether such a claim would be duplicative of Claim 1 herein, or would otherwise have merit.

### C. Equitable Estoppel

Plaintiff asserts that the previous actions of the Forest Service in "approving" his permit and drawings and so forth, and in not taking any adverse action against his special use permit for years, estops the Forest Service from later taking an opposite stance. The problem is – unlike promissory estoppel (a quasi-contractual claim); there is no such thing as a claim for "equitable estoppel."

> Finally, the court repeatedly has held that equitable estoppel is a defensive doctrine, not the basis of a cause of action. *See Gregory v. United States*, 37 Fed.Cl. 388, 396 (1997) ("[P]laintiffs invoke the doctrine of estoppel to establish the existence of a contract upon which to base their claims. As our cases make clear, however, plaintiffs cannot be permitted to establish this crucial element of their case on the basis of estoppel."); *see also American Maritime Transport, Inc. v. United States*, 18 Cl.Ct. 283, 292 (1989) ("The doctrine of equitable estoppel is referred to as a shield because it is used to bar a party from raising a defense or objection that it otherwise would have, or from instituting an action which it is entitled to institute.") (internal quotation omitted); *Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir.1981) ("[E]quitable estoppel is used to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute. Promissory estoppel is a sword, and equitable estoppel is a shield").

Lawndale Rest. Ltd etc. v. United States, 2010 WL 4867606 (Fed.Cl. 2010) (citing Ninth Circuit

authority).

Thus, plaintiff might have use of the doctrine of equitable estoppel to counteract a position taken by the United States in this litigation, but he does not have an equitable estoppel claim.

*Conclusion*

Accordingly, IT IS HEREBY RECOMMENDED the Forest Service motion to dismiss for lack of jurisdiction should be denied as to Claim 1, and granted as to Claim 2. The motion to dismiss for failure to state a claim should be granted as to Claim 3.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS HEREBY ORDERED that any motion to amend to state a claim for lack of procedural due process, or any other proposed amendment, shall be filed no later than fourteen days after any the district court adoption of these Findings and Recommendation.

DATED: December 28, 2010          /s/ Gregory G. Hollows

                                                  GREGORY G. HOLLOWS
                                                  UNITED STATES MAGISTRATE JUDGE

GGH5/076:grill757.f&r